## Testing Suspected Cattle.

*Department of Agriculture—Domestic animals—Eradication of diseases—Tuberculosis of cattle—Quarantine—Acts of May 9, 1889, July 22, 1913, and June 7, 1923.*

1. Under the Acts of May 9, 1889, P. L. 151, July 22, 1913, P. L. 928, and June 7, 1923, P. L. 498, the authorized agents of the Department of Agriculture may enter upon any premises to examine and test animals to discover whether they have diseases proscribed by the law.

2. If any person interferes with such agents, such person may be arrested, if that course seems wise, and subjected to fine and imprisonment.

3. If permission is not given to the agents, a search warrant may be sworn out before a magistrate and used to effect the necessary entry upon the premises, examinations and tests.

4. Under the Act of July 22, 1913, P. L. 928, relating to the establishment of a quarantine, it is not necessary to obtain a search warrant before entering upon a farm to post the quarantine notices as provided by the act, and this is the case whether the owner of the farm objects to entry on his premises or not.

5. If any owner of untested cattle in a region where practically all the owners of cattle have submitted to the examination and tests prescribed by law, should refuse, after a specific demand, to allow the agents of the department to enter upon his premises and examine and test his cattle, the department has the right to declare a general quarantine of the premises without examinations and tests, to post notices at prominent places on the premises, which it will be criminal for any person to remove or destroy, and to publish a copy of such notice in one newspaper circulating in the region in which the quarantined premises are situated.

Department of Justice. Opinion to Hon. F. P. Willits, Secretary of Agriculture.

WOODRUFF, Att'y-Gen., Nov. 14, 1924.—You have stated to me the conditions which are interfering with the successful execution of the law concerning the eradication of diseases of domestic animals in Mercer County in order to make that county a "modified area." I understand that there are some 5000 herds of cattle in Mercer County, and that the permission of about 4975 of the owners of these herds has been obtained, so that tests have been made and arrangements for the wiping out of tuberculosis in that large number of herds completed.

On the other hand, the owners of about twenty-five herds refuse to permit the law to be carried out on their farms, so that Mercer County has still within it some twenty-five centres of danger for the spread of tuberculosis in cattle; . also that this condition endangers the general welfare, in that tuberculosis may be spread again from these danger spots to the herds which have been cleaned up, and the great expense to the State in the killing and paying for tuberculosis cattle in said herds will thus be made futile.

You ask that the Department of Justice give you an opinion on two questions:

*A.* What may you do in order to compel the acquiescence of owners of herds who refuse their permission in the testing. of their cattle for tuberculosis?

*B.* If you do not find the method allowed by law for compelling acquiescence in tests effective, what may you do in order to quarantine the premises and herds of owners who refuse to allow tests to be made?

### *A.*

The powers and duties of the State Livestock Sanitary Board, granted by law, have been transferred to and vested in the Department of Agriculture. Section 1502 of the Administrative Code provides as follows:

"Section 1502. Animal Industry.—The Department of Agriculture shall have the power, and its duty shall be:

"(*a*) To promote the livestock industry and to prevent, suppress, control and eradicate any transmissible diseases of animals and poultry;

"(*b*) To establish and maintain general or special quarantines, as may now or hereafter be provided by law;

"(*c*) To prevent the spread of infectious and communicable diseases of animals and poultry, and, for this purpose, the officers, agents or employees thereof may at any time enter any premises where domestic animals or products thereof are kept, confined or stored; to take such measures as may seem advisable concerning methods of preventing, controlling and eradicating diseases of animals; to cause the disinfection of any premises, and, when deemed necessary to prevent the spread of disease, to cause the destruction of animals, poultry and personal property; and to regulate and prohibit the movement or transportation of animals or poultry into this Commonwealth or from one place to another within this Commonwealth; . . .

"(*g*) To make such examinations and tests as may be deemed necessary to determine the healthfulness of the domestic animals and poultry of the Commonwealth."

Section 2 of the Act of May 9, 1889, P. L. 151, makes it a misdemeanor, punishable with fine or imprisonment, for any person to interfere with any officer who may be authorized by the Department of Agriculture to carry out the provisions of the laws intended to protect against the existence or spread of diseases of domestic animals.

Section 7 of the Act of July 22, 1913, P. L. 928, provides that if the employees of the Department of Agriculture are refused or delayed in entering upon any premises in order to investigate and test for diseases of domestic animals, a search warrant may be obtained by making an affidavit before a magistrate to the effect that the agent of the department "has reason to believe that diseased animals or poultry are, or have been, confined or kept in or on such premises," and a search warrant shall give the agent of the Department of Agriculture authority to enter upon the premises and make examination by tests and otherwise concerning the presence there of diseases of domestic animals.

Testing Suspected Cattle.

## Conclusion as to question A.

Therefore, the answer to your first question is that your authorized agents may enter upon any premises to examine and test animals to discover whether they have the diseases proscribed by the law; also, that any persons who interfere with them may be arrested, if that course seems wise, and subjected to fine or imprisonment; also, that if permission cannot be obtained otherwise, a search warrant may be sworn out before a magistrate and used to effect the necessary entry upon the premises, examinations and tests.

## B.

As to your second question concerning the right of quarantine:

The law quoted above specifically gives you that right, and section 15 of the Act of July 22, 1913, P. L. 928, goes further and provides as follows:

"A general quarantine may be established and maintained whenever any of the diseases enumerated in section 9 of this act, or any other disease of domestic animals or poultry now or hereafter adjudged or proclaimed by the State Livestock Sanitary Board (Department of Agriculture) to be of a transmissible character, shall exist in any locality in the State larger in extent than that which may be included in a special quarantine. A general quarantine shall be established and maintained by the State Livestock Sanitary Board (Department of Agriculture) only. Such quarantine shall include such *premises*, locality or territorial district, and such animals, and shall continue for such time as may be deemed necessary or advisable by the said Board (Department). In establishing and maintaining such quarantine, the said Board (Department) may act through and by any member, officer, agent or employee of said Board (Department) to whom such power is delegated, and the establishment and maintenance of such quarantine by any member, officer, agent or employee of said Board (Department) shall be *prima facie* the establishment and maintenance of quarantine by said Board (Department). Whenever any premises or any locality or territorial district shall be placed in or under quarantine by said Board (Department), it shall be the duty of the member, officer, agent or employee of said Board (Department) by whom the order of said Board (Department) as to quarantine is executed, to post notices within the premises, locality or territorial district quarantined, declaring the extent and limits of premises, locality or territorial district so quarantined and the animals subject to such quarantine. At least ten such notices shall be posted in the most public places within said quarantined area. A copy of such notice shall be published in one newspaper published within such quarantined area, or, if there be no such newspaper, then in one newspaper circulating generally within such area."

It is my opinion that obtaining a warrant before entering upon a farm to post the quarantine notices, as provided in the above quoted law, is not necessary, whether the owner of the farm objects to entry upon his premises or not.

The warrant necessary for searching, examining and testing livestock is properly called a "search warrant." The legislature is acting within its rights and not contrary to the Federal and State constitutional prohibition against unreasonable searches and seizures when it gives the power, as a necessary concomitant of the duty granted in the above law, to enter upon the premises to post the quarantine notices.

Such entry is not for the purpose of search or seizure, and, therefore, does not come under the constitutional prohibition. It is for the purpose of protecting the property of the public, and particularly the health of the public as affected by diseases of domestic animals, against the reasonably suspected

Testing Suspected Cattle.

continuance of transmissible diseased conditions in the cattle on the premises quarantined.

If the owner of the premises does not want to have the quarantine notices posted, it is up to him to consent to the taking of the proper steps to examine and test his cattle. In a recent Michigan case, the Circuit Court says of a much more drastic action than the posting of a quarantine: "Such entry and inspection are lawful if they are not unreasonable, and they are not unreasonable if honestly and fairly conducted in the interest of the public health and welfare."

### Conclusion as to question B.

Therefore, I am of the opinion that if any owners of untested cattle in a region where practically all the owners of cattle have submitted to the examination and tests prescribed by the law should refuse after a specific demand to allow the authorized agent or agents of your department to enter upon their premises and examine and test their cattle, you have the right to declare a general quarantine of the farm or premises upon which cattle are kept without such examination and tests; to post notices at prominent places upon and around said premises, which it will be criminal for any person to remove or destroy, and to publish a copy of the notice in one newspaper circulating *in the region* in which the quarantined premises are situated.

### C.

The above opinion is based upon the conditions in Mercer County as reported by you, but it is evident that the same rule is applicable throughout the State. It will only defeat the law for eradication of diseases of domestic animals, dangerous to the public health and welfare, unless through examinations, tests and destruction of such diseased animals, when necessary, or through quarantine of farms where existence of disease is suspected but owners resist tests, disease is wiped out in the first instance or confined strictly in the second case.            From C. P. Addams, Harrisburg, Pa.